UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MURRELL,

        Petitioner,

v.                                   CASE NO. 2:07-CV-10331
                                   HONORABLE PATRICK J. DUGGAN

RAYMOND BOOKER,

        Respondent.
_____/

# OPINION AND ORDER DENYING PETITION
# FOR A WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S. District
Courthouse, City of Detroit, County of Wayne,
State of Michigan on September 22, 2008

PRESENT: HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Timothy Murrell ("Petitioner"), a state prisoner confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(e) (weapon used), armed robbery, *id.* § 750.529, and first-degree home invasion, *id.* § 750.110a(2), following a jury trial in the Wayne County Circuit Court in 2002. He was sentenced to concurrent terms of 18 to 50 years imprisonment on the

1

criminal sexual conduct and armed robbery convictions and to a concurrent term of 10 to 20 years imprisonment on the home invasion conviction. In his pleadings, he raises claims concerning the validity of his sentence, the effectiveness of trial counsel, and the denial of a continuance for the admission of DNA evidence. For the reasons stated, the petition for a writ of habeas corpus is denied.

## I. Facts and Procedural History

Petitioner's convictions arise from the home invasion, robbery, and assault of an elderly woman in her home in Detroit, Michigan on December 3, 2001. The Michigan Court of Appeals summarized the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> On a December morning the victim, a seventy-eight year old woman, was home alone while her husband was out feeding their chickens as usual. Knowing the couple's daily routine, Richard Boone knocked on the victim's door purporting to sell gold. When the victim stated that she did not want any gold, Boone pushed his way into the home and called defendant to join him. Inside, defendant and Boone demanded that the victim give them money. While Boone looked around for other things to take, defendant pointed a gun at the victim and ordered her to remove her panties. Defendant tried to force her to perform fellatio, but she refused. Defendant then attempted vaginal intercourse with the victim. Although the endeavor was on the whole unsuccessful, the victim testified that defendant penetrated her to some extent. Defendant and Boone left the victim's house with some money, house keys, car keys, and several other items.

*People v. Murrell*, No. 243807, 2004 WL 103115, *1 (Mich. Ct. App. Jan. 22, 2004) (unpublished).

At trial, victim Sofia Karpiuk testified about the facts of the crime as set forth

2

above and identified Petitioner as one of the perpetrators. Mrs. Karpiuk acknowledged that she identified Petitioner at a pre-trial line-up, but did not make an identification from a pre-trial photographic array.

Several police officers also testified about their investigation of the crime. One officer, Lanaris Hawkins, testified that Petitioner was driving a stolen car at the time of his arrest and had a crack pipe and cocaine in the car. Investigator Art Wimmer testified that he interviewed Petitioner at the police station following his arrest. After being advised of his constitutional rights, Petitioner admitted that he and Richard Boone planned and committed the robbery and stated that he used a toy gun during the incident. Petitioner did not make any statements about a sexual assault.

Forensic serologist Cathy Carr testified that she examined evidence collected from the victim and her clothing and a blood sample taken from Petitioner. Her testing revealed that sperm cells taken from the victim's vaginal swab and underpants matched Petitioner's DNA. Defense counsel objected to this testimony before and during trial because the prosecution did not provide defense counsel with the expert's report until the day before trial. Prior to trial, the court ordered the prosecution to make the witness available to the defense for an interview prior to her testimony. Counsel interviewed the witness before trial and indicated that he was satisfied at that time. Counsel nonetheless renewed his objection to the DNA expert's testimony during trial. The court overruled the objection.

At the close of trial, the jury convicted Petitioner of first-degree criminal sexual

conduct, armed robbery, and home invasion, but acquitted him of charges of being a felon in possession of a firearm and possession of a firearm during the commission of a felony. The trial court subsequently sentenced him to concurrent terms of 18 to 50 years imprisonment on the criminal sexual conduct and armed robbery convictions and 10 to 20 years imprisonment on the home invasion conviction.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising claims of ineffective assistance of counsel and the denial of a continuance regarding the admission of DNA evidence. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *Id*. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Murrell*, 470 Mich. 888, 682 N.W.2d 93 (2004).

Petitioner subsequently filed a motion for relief from judgment in the trial court challenging the validity of his sentence, which was denied on December 6, 2005. He filed an application for leave to appeal with the Michigan Court of Appeals which was denied. *People v. Murrell*, No. 267464 (Mich. Ct. App. July 26, 2006) (unpublished). He also filed an application for leave to appeal with the Michigan Supreme Court which was denied. *People v. Murrell*, 477 Mich. 949, 723 N.W.2d 873 (2006).

Petitioner, through counsel, thereafter filed his federal habeas petition, asserting the following claims as grounds for relief:

> I. His sentencing guideline range was increased utilizing factors that were not proven to a jury beyond a reasonable doubt in violation of his Fifth and Sixth Amendment rights under the United States

4

Constitution.

II. He was denied the effective assistance of counsel through counsel's neglectful failure to object and/or seek a curative instruction when a police officer interjected that when arrested, Petitioner possessed a crack pipe, a rock of crack cocaine, other cocaine, and was driving a stolen car.

III. The trial court's refusal to suppress last minute scientific evidence or give defense counsel a reasonable continuance within which to adequately investigate and prepare denied Petitioner his right to present a defense in violation of his Fifth Amendment due process rights.

Respondent has filed an answer to the petition contending that it should be denied because the claims are defaulted, not cognizable, and/or lack merit. Petitioner has filed a reply to that answer.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme]

Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

### III. Analysis

#### A.

Petitioner first asserts that he is entitled to habeas relief because his sentencing guideline range was increased using facts neither admitted by him nor proven to a jury beyond a reasonable doubt in violation of his Fifth and Sixth Amendment rights. Respondent contends that this claim is barred by procedural default, is not cognizable, and lacks merit.

"Claims arising out of [a state trial court's sentencing] decision are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law." *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). To the extent that Petitioner challenges the scoring of his sentencing guidelines under state law, he is not entitled to relief from this Court. A claim that the state sentencing guidelines were incorrectly scored fails to state a claim upon which federal habeas relief can be granted. *See, e.g., Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) (unpublished); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Petitioner's sentences are within the statutory maximums. He has failed to state a claim upon which federal habeas relief may be granted as to this issue.

Petitioner also cannot prevail on his claim that he is entitled to habeas relief because the trial court relied upon facts not found by the jury nor admitted by him in

7

imposing his sentence in violation of the Fifth and Sixth Amendments. In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme under which the maximum penalty could be increased by judicial fact-finding. The Court held that the state guideline scheme violated Sixth Amendment rights and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 231-32, 125 S. Ct. 738, 749 (2005) (summarizing *Blakely*). More recently, in *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007), the Supreme Court reviewed California's determinate sentencing law which set forth a tripartite system in which each offense could be punished by an upper term, a middle term, or a lower term. Under the system, the judge was obligated to impose the middle term unless specific judicial fact-finding supported the upper or lower term. *Cunningham*, 127 S. Ct. at 861-62. The "statutory maximum" was deemed to be the middle term, not the upper term, and the Supreme Court held that because the California system authorized the judge, not the jury, to find the facts for an upper term sentence, it violated the Sixth Amendment. *Id*. at 871. Petitioner cites *Apprendi, Blakely*, *Booker*, and *Cunningham* in his pleadings.

This claim lacks merit. The *Blakely* line of cases does not apply to Michigan's intermediate sentencing scheme. *Blakely* involved a trial court's departure from a state's determinate sentencing scheme. "Michigan, in contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law." *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004) (citing Mich. Comp. Laws § 769.8). The minimum sentence for a defendant is based on the applicable sentencing guidelines ranges. *Id.* Under Michigan law, "it is only the minimum sentence that must presumptively be within the appropriate sentence range." *People v. Babcock*, 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 256 n.7 (2003) (citing Mich. Comp. Laws § 769.34(2)). "The trial judge sets the minimum but can never exceed the maximum . . . ." *Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. In *People v. Drohan*, 475 Mich. 140, 160-64, 715 N.W.2d 778, 789-92 (2006), the Michigan Supreme Court held that Michigan's indeterminate sentencing scheme does not offend the Sixth Amendment right to trial by jury because a defendant is always subject to the statutory maximum sentence for purposes of *Blakely* and the Sixth Amendment does not entitle a defendant to a sentence below the statutory maximum. *See also People v. Harper*, 479 Mich. 599, 613-14, 739 N.W.2d 523, 532-33 (2007), *cert. denied*, _ U.S. _, 128 S. Ct. 1444 (2008).

Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *Blakely*, 542 U.S. at 304-05, 308-09, 124 S. Ct. at 2538-40. The federal courts within this Circuit have examined Michigan's indeterminate

9

sentencing scheme and have found no possible Sixth Amendment violation. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct. 26, 2007) (unpublished); *Hill v. Sherry*, No. 07-13978, 2008 WL 1902106, *3 (E.D. Mich. April 30, 2008); *Delavern v. Harry*, No. 07-CV-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept. 7, 2007); *Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066, *4-6 (E.D. Mich. May 4, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov. 30, 2006). Habeas relief is not warranted on this claim.

**B.**

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to police testimony that Petitioner possessed a crack pipe and cocaine and was driving a stolen car when he was arrested. Respondent contends that this claim lacks merit.

In order to establish ineffective assistance of counsel, Petitioner "must show that counsel's performance was deficient. . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

10

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Therefore, "judicial scrutiny of counsel's performance must be 'highly deferential.'" *Id*. at 689, 104 S. Ct. at 2065. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068.

A successful ineffective assistance of counsel claim requires proof that counsel's performance was deficient and that counsel's "errors deprived [Petitioner] of a fair trial." *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994). The court must assess the ineffective assistance claim in relation to the evidence of Petitioner's guilt. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96, 104 S. Ct. at 2069. A petitioner will be generally be unable demonstrate that any errors by counsel prejudiced the defense where "there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> With regard to the drugs, defense counsel argued in closing that defendant's inculpatory statement was inaccurate because he was under the influence of drugs at the time it was made. Thus, it was a matter of trial strategy to allow the testimony regarding the drugs. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy.

11

> *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). A defense attorney is given great discretion regarding trial strategy and tactics. *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). Merely because a decision was unsuccessful does not presume error. *Id*.
>
> With regard to the stolen vehicle, there is no indication that there was any strategic reason for failing to object. But defendant has failed to show a reasonable probability that he would have been acquitted if the testimony had been objected to or a curative instruction had been given. The evidence showed that the victim had ample time to view defendant while they interacted in her home. Additionally, the stolen vehicle was only mentioned once in the testimony and the prosecutor did not mention it in closing argument. Therefore, we conclude that defendant was not denied effective assistance of counsel on this basis.

*Murrell*, 2004 WL 103115 at *1-2.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. As to the drugs, trial counsel may have reasonably determined that testimony that Petitioner possessed a crack pipe and cocaine when arrested supported the defense argument that Petitioner made incriminating statements to police because he was under the influence of narcotics and not thinking clearly. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Campbell v. Coyle*, 260 F.3d 531, 551 (6th Cir. 2001) ("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken.").

Moreover, even assuming that counsel erred in failing to object to the officer's testimony regarding the stolen car, Petitioner cannot establish that he was prejudiced by counsel's conduct. First, the prosecution did not dwell on the testimony nor argue that it

was evidence of guilt. Second, the prosecution presented significant evidence of Petitioner's guilt, including the victim's testimony, the DNA evidence, and Petitioner's own incriminating statements. Given such circumstances, Petitioner cannot establish that counsel was ineffective under *Strickland*. Habeas relief is not warranted on this claim.

**C.**

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court admitted "last-minute" DNA evidence and denied his request for a continuance to evaluate the evidence, violating his right to present a defense. Respondent contends that this claim lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. State*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967). However, "[a] defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). Additionally, a trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 849 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (recognizing that trial courts have "broad discretion" in matters related to continuances). When a habeas petitioner challenges the grant or denial of such a request, "not only must there have been an abuse

13

of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986) (internal quotations omitted).

The Michigan Court of Appeals denied relief on this claim, stating as follows:

> Although defendant's statement of the issue hints at an evidentiary issue, defendant does not actually argue that the evidence was inadmissible. In the lower court, defendant asked that the evidence be suppressed or that a continuance be granted because the evidence was provided to defendant the day before trial. But defendant did not argue that the evidence should have been suppressed for any reason other than it being "last-minute." On appeal, the only cases defendant cites in this regard address whether the trial court abused its discretion in refusing to reopen proofs after the parties rested. Here, the situation did not involve reopening proofs after the parties rested. Thus, we do not address whether the trial court erred in admitting the evidence, but rather, whether the trial court erred in denying defendant's request for a continuance.
>
> This Court reviews the grant or denial of an adjournment for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). In addition, a defendant must show prejudice as a result of the trial court's abuse of discretion. *Id*. This Court reviews claims of due process violations de novo. *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999). Not every denial of a request for a continuance violates due process. *People v Charles O Williams*, 386 Mich 565, 575; 194 NW2d 337 (1972), quoting *Ungar v Sarafite*, 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 (1964).
>
> The trial court did not abuse its discretion in denying the continuance because defense counsel [sic] provided with ample time to interview the witness and prepare a cross-examination. The afternoon before the first day of trial, the prosecutor faxed defense counsel the expert report on the DNA evidence. On the first morning of trial, defense counsel requested either suppression of the testimony or a continuance arguing that defendant was entitled to his own expert or time to prepare a cross-examination of the prosecution's expert. The trial court asked the prosecutor to bring the witness in later that day to allow defense counsel time to interview her and prepare a cross-examination. The trial court ruled that the witness would not

> testify until the next day. The next day, defense counsel again objected to the expert's testimony, but the trial court noted that defense counsel indicated that he was satisfied with his interview with the expert the day before. The witness testified that samples taken from the victim matched all eight genetic markers of a sample taken from defendant. On cross-examination, defense counsel challenged the statistical theory on which the expert's opinion was based. Because defense counsel had adequate time to prepare his cross-examination of this witness, the trial court did not err in denying the continuance.
>
> Even if the trial court had abused its discretion, defendant has failed to show that he was unfairly prejudiced by the evidence. The victim testified that defendant was in her house and in close proximity to her for several minutes. The victim also identified defendant in a physical lineup. Therefore, even without the DNA evidence, there was ample evidence to support defendant's conviction.

*Murrell*, 2004 WL 103115 at *2-3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, the defense was aware of the possibility that DNA evidence could be presented given the nature of the case and the fact that Petitioner had provided a blood sample for testing. Second, the record indicates that the prosecution also received the report late and did not intentionally delay turning over the expert report. Third, defense counsel was able to review the report prior to trial and was provided with an opportunity to interview the expert witness before she testified at trial. The trial court's measures were sufficient to provide Petitioner with an opportunity to defend the charges against him. More importantly, Petitioner has not shown how the grant of a continuance would have likely benefitted the defense, nor has he challenged the testifying expert's scientific methods or conclusions. In the state courts and in this Court, Petitioner has

15

only speculated that additional preparation time would have provided assistance to his case. Such conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Lastly, even if the trial court erred in this regard, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993) (internal quotations ommitted); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S. Ct. 992, 999 (1995) (holding that a habeas court should grant a petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Given the significant evidence of guilt presented at trial, including the victim's testimony and Petitioner's own admissions to police, any error by the trial court in admitting the DNA evidence and/or refusing to grant a continuance did not have a substantial and injurious effect or influence on the jury's verdict. Petitioner has not shown that the state court's decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application of federal law or the facts. Habeas relief is not warranted.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

<pre>
                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE
</pre>

Copies to:

Paul J. Stablein
Raina Korbakis